UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GEORGE BABA ENG,

                         Plaintiff,                    9:04-CV-1146 (NAM/GHL)

        -v.-

M. THERRIEN, Correction Officer, Great Meadow C.F.;
C. BLOOD, Correction Officer, Great Meadow C.F.; and
GARY GREEN, Superintendent, Great Meadow C.F.,

                         Defendants.
_____

APPEARANCES:                                OF COUNSEL:

GEORGE BABA ENG, 77-A-4777
 Plaintiff, *Pro Se*
Auburn Correctional Facility
135 State Street
Auburn, NY 13021

HON. ANDREW M. CUOMO                         DAVID L. COCHRAN, ESQ.
Attorney General for the State of New York   Assistant Attorney General
 Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This prisoner civil rights action has been referred to me for Report and Recommendation

by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C.

§ 636(b) and Local Rule 72.3(c).  Currently before the Court is Defendants' second motion for

partial summary judgment.  (Dkt. No. 94.)[1]  For the reasons discussed below, I recommend that

_____

        [1]      Defendants' first motion for summary judgment was granted by Order of Chief
Judge Mordue on March 30, 2006.  (Dkt. No. 66.)

Defendants' motion be granted.

## I.     BACKGROUND

### A.     Relevant Procedural History

On October 1, 2004, George Baba Eng ("Plaintiff") commenced this prisoner civil rights action, alleging that certain employees of the New York State Department of Correctional Services ("DOCS") violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution when they improperly pat-frisked him, or caused him to be improperly pat-frisked, at Great Meadow Correctional Facility in 2004.  (Dkt. No. 1.)

On December 17, 2004, Defendants filed a motion for summary judgment with respect to Plaintiff's claims.  (Dkt. No. 15.)  While that motion was pending, Plaintiff sought, and was granted, leave to file both an amended and supplemental pleading.  Specifically, on January 25, 2005, Plaintiff was granted leave to file an Amended Complaint; and on February 4, 2005, he filed that Amended Complaint.  (Dkt. Nos. 21, 23.)  Similarly, on July 27, 2005, Plaintiff was granted leave to file a Supplemental Complaint; and on December 1, 2005, he filed that Supplemental Complaint.  (Dkt. Nos. 37, 47.)

On March 7, 2006, I issued a Report-Recommendation with regard to Defendants' motion for summary judgment.  (Dkt. No. 60.)  Although Defendants' motion expressly addressed only the claims asserted in Plaintiff's original Complaint, the motion also effectively addressed the claims asserted in Plaintiff's Amended Complaint, since those claims were very similar to the claims asserted in his original Complaint.  (*Compare* Dkt. No. 1 *with* Dkt. No. 23.)  However, Defendants' motion did not address the claims asserted in Plaintiff's Supplemental Complaint.  (*Compare* Dkt. No. 15 *with* Dkt. No. 47.)  As a result, I construed Defendants' motion as one for

2

*partial* summary judgment, i.e., a motion that requested dismissal only of the claims asserted in Plaintiff's Amended Complaint. (Dkt. No. 60, note 1.) For the reasons stated in my Report-Recommendation of March 7, 2006, I recommended that the Court grant Defendants' motion for partial summary judgment. (Dkt. No. 60.) On March 30, 2006, Chief Judge Mordue adopted my recommendation, dismissing the claims asserted in Plaintiff's Amended Complaint. (Dkt. No. 66.)

Remaining in the case, therefore, were Plaintiff's claims asserted in his Supplemental Complaint. (Dkt. No. 47.) Those claims are now the subject of Defendants' second motion for partial summary judgment.

### B.       Plaintiff's Claims in his Supplemental Complaint

Generally, in his Supplemental Complaint, Plaintiff alleges that, between September of 2004, and November of 2004, while he was incarcerated at Great Meadow Correctional Facility ("Great Meadow C.F."), three employees of Great Meadow C.F.--Correction Officer M. Therrien, Correction Officer C. Blood, and Superintendent Gary Green ("Defendants")--violated Plaintiff's rights under the First, Fourth, Eighth and Fourteenth Amendments by (1) improperly pat frisking him, or causing him to be improperly pat frisked, on approximately four occasions, and/or (2) filing false disciplinary charges against him in retaliation for complaining about the allegedly improper pat frisks, and/or (3) conspiring to wrongfully find Plaintiff guilty of the referenced disciplinary charges. (*See generally* Dkt. No. 47 [Plf.'s Supp. Compl.].)

Specifically, liberally construed, Plaintiff's Supplemental Complaint alleges as follows:

(1) On September 8, 2004, Defendant Blood pat frisked Plaintiff improperly by touching

3

or handling his penis, testicles and rectal cavity opening;[2]

(2) On September 18, 2004, October 1, 2004, and October 11, 2004, Defendants Therrien and/or Blood pat frisked Plaintiff improperly by touching or handling his penis, testicles and rectal cavity opening;[3]

(3) On October 20, 2004, Defendant Blood filed a false misbehavior report against Plaintiff in retaliation for his having (a) filed grievances against Defendant Blood (on June 29, 2004, July 19, 2004, September 16, 2004, and October 7, 2004), and/or (b) written a grievance against Defendant Blood (dated October 19, 2004, but apparently not filed), and/or (c) submitted letters of complaint against Defendant Blood (on July 14, 2004, and July 15-16, 2004);[4] and

(4) At some point between October 20, 2004, and October 26, 2004, Defendant Green knowingly appointed a biased hearing officer (named J. Jackowski) to conduct the hearing on the October 20, 2004, misbehavior report filed by Defendant Blood (and, in that way, "conspired" with the hearing officer to wrongfully convict Plaintiff of the disciplinary charges brought by Defendant Blood).[5]

---

[2]   (Dkt. No. 47, ¶ 35 [Plf.'s Supp. Compl.].)

[3]   (Dkt. No. 47, ¶¶ 36-38 [Plf.'s Supp. Compl.].)

[4]   (Dkt. No. 47, ¶¶ 39, 41 [Plf.'s Supp. Compl.]; *see also* Dkt. No. 15, Parts 7-8, 11-12 [attaching grievances dated 6/29/04 and 7/19/04 and letters of complaint received 7/14/04 and 7/16/04]; Dkt. No. 16, Ex. Q [attaching grievance filed on 10/7/04], Ex. S [attaching grievance dated 10/19/04 but not bearing a stamp showing filing], Ex. U [attaching grievance filed on 9/16/04]; Dkt. No. 3, Part 2 [not attaching any other such grievances or letters of complaint from this time period].)

[5]   (Dkt. No. 47, ¶ 40 [Plf.'s Supp. Compl.]; Dkt. No. 47 [Exs. O-7 and O-8 to Plf.'s Supp. Compl.].)

C.      **Defendants' Motion for Partial Summary Judgment**

Generally, Defendants' motion for partial summary judgment raises the following three issues with respect to Plaintiff's Supplemental Complaint: (1) whether Plaintiff has adduced any evidence establishing a violation of the Fourth Amendment; (2) whether Plaintiff has adduced any evidence establishing a violation of the Eighth Amendment; and (3) whether Plaintiff has adduced any evidence establishing that Defendant Green was personally involved in the Fourteenth Amendment due process violation alleged.  (*See generally* Dkt. No. 94, Part 9 [Defs.' Mem. of Law].)

Defendants' motion does *not* request dismissal of Plaintiff's First Amendment retaliation claim against Defendant Blood.  (*Id*. at 3 [Defs.' Mem. of Law, explaining that the only claims attacked by Defendants' motion are the first and third of the three claims described by Defendants, not the second claim, which is Plaintiff's retaliation claim against Def. Blood].)  For this reason, Defendants' motion is one for partial summary judgment and not one for summary judgment.

## II.     SUMMARY JUDGMENT STANDARD

The well-known legal standard that governs motions for summary judgment is recited in my Report-Recommendation regarding Defendants' first motion for partial summary judgment. (Dkt. No. 60, at 6-11.)  On March 30, 2006, Chief Judge Mordue found that Report-Recommendation to be "correct in all respects," after conducting a *de novo* review of it.  (Dkt. No. 66, at 2.)  Therefore, in the interest of brevity, I respectfully refer the reader to that Report-Recommendation for a recitation of the legal standard that governs Defendants' motion.  (Dkt. No. 66, at 2.)

5

I would add only two points.  First, when I recited the legal standard in my Report-Recommendation of March 7, 2006, I referred to "the generous perspective with which the Court must view a *pro se* plaintiff's pleadings."  (Dkt. No. 60, at 7.)  Understandably, there is an exception to this general rule for exceptionally experienced *pro se* litigants.  (Dkt. No. 85, at 4-6 [Order of Lowe, M.J., describing exception].)  I did not, when reciting the summary judgment standard in my prior Report-Recommendation, explain the exception to that general rule, because I did not think the exception applied to Plaintiff.  However, after issuing that Report-Recommendation, the full extent of Plaintiff's litigation experience became known to me.  Specifically, on December 26, 2006 (after conducting a routine search of Plaintiff's litigation experience in order to determine the effect of any previous cases on the PLRA's "three strikes" rule, and the doctrines of collateral estoppel and res judicata), I learned that, as of that date, Plaintiff had filed at least 15 other actions or appeals in federal and state courts.  (Dkt. No. 85, at 4-6.)[6]  Since that time, Plaintiff's litigation experience has only grown, as has the legal authority

---

[6]       I note that, in his objections to my Order of December 26, 2006, Plaintiff misunderstands the rationale in the Second Circuit for the revocation of special solicitude.  (Dkt. No. 86.)  The rationale is not to punish the litigant for filing "frivolous lawsuits," as Plaintiff asserts.  (*Id*. at 6.)  That is the common rationale for revoking the special status of an overly litigious *pro se* litigant in the Third Circuit.  *See, e.g., Tilbury v. Aames Home Loan*, 05-CV-2033, 2005 WL 3477558, at *10 (D.N.J. Dec. 12, 2005); *Hollis-Arrington v. PHH Mort. Corp.*, 05-CV-2556, 2005 WL 3077853, at *9 (D.N.J. Nov. 15, 2005); *Perry v. Gold & Laine, P.C.*, 371 F. Supp. 2d 622, 629 (D.N.J. 2005); *Smith v. Litton Loan Serv., LP*, 2005 WL 289927, at *13 (E.D. Pa. Feb. 4, 2005); *Douris v. Bucks County*, 04-CV-0232, 2005 U.S. Dist. LEXIS 1279, at *2-5, 40-41 & n.19 (E.D. Pa. Jan. 31, 2005); *Weber v. Henderson*, 275 F. Supp. 2d 616, 623 (E.D. Pa. 2003).  Rather, the general rationale in the Second Circuit is to recognize the lack of a need to afford such special status in the first place, and to restore the playing field to a level nature.  (*See* Dkt. No. 85, at 4-5, notes 2-3 [collecting cases from the Second Circuit].)
       I note also that Plaintiff argues that, in five or more of his 15 previous actions or appeals, he had been represented by counsel.  (Dkt. No. 86, at 7.)  However, prior representation by counsel is not a determinative factor in deciding whether or not to treat an extremely experienced *pro se* litigant the same as any other litigant.  For example, when the Second Circuit

supporting the revocation of his special solicitude.  (*See* Dkt. No. 89, at 3 [Order of Mordue, C.J.,

affirming Order of Lowe, M.J., and specifically finding that "[t]here is ample support for

Magistrate Judge Lowe's conclusion" that Plaintiff's special solicitude as a pro se litigant should

be revoked].)[7]  Consequently, I continue to find that the special solicitude normally afforded *pro*

*se* civil rights litigants should not be afforded Plaintiff, in light of his considerable litigation

experience.  Turning a blind eye to his extraordinary litigation experience would only work a

_____

issued its decision in *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994), the *pro se*
plaintiff–Ronald Davidson–had been represented by counsel in more than one-quarter of the
previous cases he had filed, as revealed by a careful review of the United States Judiciary's
Public Access to Court Electronic Records ("PACER") Service.  *See Davidson v. Scully*, 81-CV-
0390 (S.D.N.Y.); *Davidson v. Scully*, 83-CV-2025 (S.D.N.Y.); *Davidson v. Smith*, 84-CV-6954
(S.D.N.Y.); *Davidson v. Flynn*, 86-CV-0316 (N.D.N.Y.); *Davidson v. Smith*, 87-CV-1342
(W.D.N.Y.); *Davidson v. Wilmot*, 88-CV-0026 (W.D.N.Y.); *Davidson v. Wilmot*, 88-CV-0063
(W.D.N.Y.); *Davidson v. Riley*, 88-CV-1042 (N.D.N.Y.); *Davidson v. Coughlin*, 88-CV-0646
(N.D.N.Y.); *Davidson v. City of New York*, 91-CV-2290 (S.D.N.Y.); *Davidson v. Murray*, 92-
CV-0283 (W.D.N.Y.); *Davidson v. Zon*, 94-CV-0184 (W.D.N.Y.).

   [7]      *See also Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *3-4 (N.D.N.Y.
Sept. 26, 2007) (Kahn, J., adopting Report-Recommendation); *Carlisle v. Goord*, 03-CV-0296,
2007 WL 2769566, at *9 (N.D.N.Y. Sept. 21, 2007) (Scullin, J., adopting Report-
Recommendation); *Shomo v. N.Y. D.O.C.S.*, 04-CV-0910, 2007 WL 2580509, at *3-4 (N.D.N.Y.
Sept. 4, 2007) (Kahn, J., adopting Report-Recommendation); *Standley v. Dennison*, 05-CV-1033,
2007 WL 2406909, at *7-8 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting Report-
Recommendation); *Tracy v. Freshwater*, 01-CV-0500, 2007 WL 2230068, at *2-4 (N.D.N.Y.
July 31, 2007) (Munson, J., adopting Report-Recommendation); *Muniz v. Goord*, 04-CV-0479,
2007 WL 2027912, at *6 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting Report-
Recommendation); *Eady v. Lappin*, 05-CV-0824, 2007 WL 1531879, at *4-6 (N.D.N.Y. May 22,
2007) (Mordue, C.J., adopting Report-Recommendation); *Edwards v. Selsky*, 04-CV-1054, 2007
WL 748442, at *2-3 (N.D.N.Y. March 6, 2007) (Mordue, C.J., adopting Report-
Recommendation); *Rolle v. Garcia*, 04-CV-0312, 2007 WL 672679, at *4 (N.D.N.Y. Feb. 28,
2007) (Kahn, J., adopting Report-Recommendation); *Mora v. Bockelmann*, 03-CV-1217, 2007
WL 603410, at *4 (N.D.N.Y. Feb. 22, 2007) (Mordue, C.J., adopting Report-Recommendation);
*Brown v. Goord*, 04-CV-0785, 2007 WL 607396, at *2-3 (N.D.N.Y. Feb. 20, 2007) (McAvoy, J.,
adopting Report-Recommendation); *Mitchell v. Harriman*, 04-CV-0937, 2007 WL 499619, at *3
(N.D.N.Y. Feb. 13, 2007) (Sharpe, J., adopting Report-Recommendation); *Sledge v. Kooi*, 04-
CV-1311, 2007 WL 969576 (N.D.N.Y. March 28, 2007) (McAvoy, J.), adopting 2007 WL
951447, at *3-4 (N.D.N.Y. Feb. 12, 2007).

grave injustice to Defendants, who come to this Court expecting a level playing field, not one

tilted in favor of a *pro se* litigant who clearly does not need it.

Second, the result of this Report-Recommendation would be the same whether the merits

of Plaintiff's claims were judged by the ordinary standard applied to litigants or the more lenient

standard applied to *pro se* litigants.  This is because it is well established that proceeding *pro se*

does not otherwise relieve a party from the usual requirements to survive a motion for summary

judgment.[8]  Thus, *pro se* litigants who are properly notified of the consequences of failing to

respond to a motion for summary judgment may not avoid the strictures of Rule 56 if they fail to

respond properly.[9]  Stated more simply, even the most generous leniency or solicitude has its

---

[8]        **Second Circuit:** *See, e.g., Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) [citation omitted].

**Northern District:** *See, e.g., Hector v. Chase-Pitkin,* 05-CV-0214, 2007 WL 2764799, at *8 (N.D.N.Y. Sept. 20, 2007) (Mordue, C.J.) [citations omitted]; *Carlisle v. Goord,* 03-CV-0296, 2007 WL 2769566, at *9 & n.8 (N.D.N.Y. Sept. 21, 2007) (Scullin, J., accepting Report-Recommendation in its entirely, upon *de novo* review) [citations omitted].

**Southern District:** *See, e.g., Hamlett v. Srivastava*, 496 F. Supp.2d 325, 328 (S.D.N.Y. 2007) [citations omitted]; *Fisk v. Letterman*, 501 F. Supp.2d 505, 521 (S.D.N.Y. 2007) [citations omitted]; *Allen v. City of New York*, 480 F. Supp.2d 689, 703 (S.D.N.Y. 2007) [citations omitted]; *Barrett v. I.R.S.*, 06-CV-1403, 2007 WL 1988893, at *2 (S.D.N.Y. Jul. 11, 2007) [citations omitted].

**Western District:** *See, e.g., Wynn v. New York,* 506 F. Supp.2d 215, 218 (W.D.N.Y. 2007) [citations omitted]; *Holt v. Roadway Package Sys., Inc.*, 506 F. Supp.2d 194, 200 (W.D.N.Y. 2007) [citations omitted]; *Garibaldi v. Anixter, Inc.*, 492 F. Supp.2d 290, 292 (W.D.N.Y. 2007) [citations omitted]. *Flemming v. Wurzberger,* 490 F. Supp.2d 320, 322 (W.D.N.Y. 2007) [citations omitted]; *Crenshaw v. Herbert*, 445 F. Supp.2d 301, 303 (W.D.N.Y. 2007) [citation omitted].

**Eastern District:** *See, e.g., Waheed v. SUNY,* 04-CV-5630, 2007 WL 2126092, at *1, n.1 (E.D.N.Y. July 24, 2007) [citation omitted]; *Viscusi v. Proctor & Gamble,* 05-CV-1528, 2007 WL 2071546, at *9 (E.D.N.Y. July 16, 2007) [citation omitted]; *Johnson v. New York*, 04-CV-1070, 2007 WL 764514, at *6 (E.D.N.Y. Mar. 9, 2007) [citation omitted]; *Wilson v. Pessah*, 05-CV-3143, 2007 WL 757993, at *2 (E.D.N.Y. Mar. 8, 2007) [citations omitted].

[9]        *Durran*, 251 F. Supp.2d at 1211-12 [internal quotation marks and citations omitted]; *accord, Shabazz-Allah v. Guard Mgmt. Serv.*, 97-CV-8194, 1999 WL 123641, at *3

limits.[10]

Here, I note that Plaintiff was unquestionably so advised.  On April 13, 2007, Defendants

specifically advised him of the potential consequences of failing to properly oppose their motion.

(Dkt. No. 94, Part 1, at 2.)  They provided a more detailed warning on April 23, 2007.  (Dkt. No.

96, Part 1.)  As a result, on May 29, 2007, Plaintiff filed opposition papers that are copious and

detailed.  (Dkt. No. 97 [containing a nine-page Rule 7.1 Response and Rule 7.1 Statement, a

seven-page affidavit, 17-page memorandum of law, and 42 pages of exhibits].)

Moreover, Defendants provided the same warning to Plaintiff during their prior motion

---

(S.D.N.Y. Mar. 8, 1999); *see, e.g.*, *Sawyer v. Am. Fed. of Gov't*, 180 F.3d 31, 34-36 (2d. Cir. 1999) (affirming district court's granting of defendants' motion for summary judgment because of *pro se* plaintiff's "insufficient" position on the merits of the action, where his opposition papers, although inadequate, demonstrated that he knew he was required to produce evidence to defeat defendants' motion), *accord*, *Forsyth v. Fed. Employ. and Guidance Serv.*, 409 F.3d 565, 570-72 (2d Cir. 2005), *abrogated on other grounds*, *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S.Ct. 2162 (2007); *Irby v. New York City Transit Auth.*, 262 F.2d 412, 414 (2d Cir. 2001) (sufficient notice to *pro se* plaintiff of consequences of failing to properly oppose defendants' motion for summary judgment came through supplemental letter from defendants); *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (sufficient notice to *pro se* plaintiff of consequences of failing to properly oppose defendants' motion for summary judgment came through their notice of motion to him).

[10]     *Barclay v. Polano*, 03-CV-6585, 2004 WL 2900694, at *1 (W.D.N.Y. Dec. 14, 2000) ("Nevertheless, the leniency normally accorded pro se litigants is not without limits, and all normal rules of pleading are not absolutely suspended.") [internal quotation marks and citations omitted]; *accord, Saunders v. Goord*, 98-CV-5057, 2002 WL 31159109, at *3 (S.D.N.Y. Sept. 27, 2002), *Gil v. Vogilano*, 131 F. Supp.2d 486, 491 (S.D.N.Y. 2001), *Stinson v. Sheriff's Dep't*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980) [citations omitted]; *see also Figueroa v. Nat'l Audubon Soc.*, 99-CV-1651, 2000 WL 1170116, at *2 (S.D.N.Y. Aug. 17, 2000) ("Notwithstanding the principle that *pro se* litigants are entitled to leniency, this leniency is not without its limits. . . .  Plaintiff has had more than sufficient time in which to effect service of process on the defendants."); *Brasch v. Koch*, 713 F. Supp. 709, 711 (S.D.N.Y. 1989) ("The leniency to which pro se litigants are entitled is not without limits.  Notwithstanding the passage of over 11 months, Mr. Brasch has offered no basis for rejecting the Magistrate's report and has failed to prosecute the action diligently.").

for partial summary judgment, on December 17, 2004.  (Dkt. No. 15, Part 1, at 2.)  Indeed, in my Report-Recommendation with regard to Defendants' prior motion for partial summary judgment, I specifically based several findings of undisputed fact in whole or in part on Plaintiff's failure, in his Rule 7.1 Response, to cite record evidence in support of his attempted denials of Defendants' factual assertions.  (Dkt. No. 60, at 12-16, notes 30, 33-37, 39-43, 45, 46.)  Finally, at least four of Plaintiff's numerous previous prisoner civil rights actions required him to oppose motions for summary judgment.[11]  In short, it is hard for me to imagine how a *pro se* plaintiff could be more familiar with the consequences of failing to properly oppose a motion for summary judgment than is Plaintiff.

Despite being so advised, Plaintiff largely fails, in his Rule 7.1 Response, to set forth "specific citation[s] to the record where the factual issue[s] arise[]," as required by Local Rule 7.1(a)(3).  (*See, e.g.,* Dkt. No. 97, Part 1, ¶¶ 1, 4, 14, 15, 18, 19, 21, 22, 24 [Plf.'s Rule 7.1 Response, disputing certain facts asserted by Defendants, but not setting forth specific citations to the record where the alleged factual issue arises].)

---

[11]      *See, e.g., Eng v. White*, 02-CV-0192 (N.D.N.Y.) (adopting magistrate's report recommending granting of defendants' motion for summary judgment, over plaintiff's objection, on 3/30/03); *Baba Omawale Shange a/k/a George Eng v. Coughlin*, 87-CV-1107 (N.D.N.Y.) (denying plaintiff's motion for summary judgment, and granting defendants' motion for summary judgment, in part, on 12/28/92); *Baba Omawale Shange a/k/a George Eng v. Coughlin*, 85-CV-0922 (N.D.N.Y.) (denying plaintiff's motion for summary judgment, and granting defendants' motion for summary judgment, in part, on 12/28/92); *Eng v. Coughlin*, 80-CV-0385 (W.D.N.Y.) (granting defendants' motion for summary judgment, in part, on 5/6/98).

### III.   ANALYSIS

#### A.   Whether Plaintiff Has Adduced Evidence in Support of the Fourth Amendment Claim Alleged in His Supplemental Complaint

In his Supplemental Complaint, Plaintiff alleges that, between September of 2004, and November of 2004, Defendants Therrien and Blood violated Plaintiff's rights under the Fourth Amendment by improperly pat frisking him, or causing him to be pat frisked, in an "abusive" and "sexually assaultive" manner, on approximately four occasions–on September 8, 2004, September 18, 2004, October 1, 2004, and October 11, 2004.  (Dkt. No. 47, ¶¶ 35-38 [Plf.'s Supp. Compl.].)  More specifically, Plaintiff alleges that, during each of the pat-frisks, either Defendants Therrien or Blood touched Plaintiff's penis, testicles and rectal cavity.  (*Id.*)

The Fourth Amendment legal standard that Defendants recite in their memorandum of law in support of their current motion for partial summary judgment is the exact same legal standard recited in their memorandum of law in support of their prior motion for partial summary judgment.  (*Compare* Dkt. No. 94, Part 9, at 4-6 *with* Dkt. No. 15, Part 14, at 4-6.)  In my Report-Recommendation on Defendants' prior motion for partial summary judgment, I found this recitation of the applicable legal standard to be correct.  (Dkt. No. 60, at 26-27.)  Furthermore, Chief Judge Mordue approved and adopted my Report-Recommendation after finding it to be "correct in all respects."  (Dkt. No. 66, at 1.)  As a result, I see no reason to disturb my previous finding that Defendants have recited the correct legal standard governing Plaintiff's Fourth Amendment claim.

Plaintiff somewhat misconstrues the legal standard governing his Fourth Amendment claim.  Specifically, in his opposition memorandum, he cites *Turner v. Safely*, 482 U.S. 78

(1987), for the proposition that, in order to successfully oppose his Fourth Amendment claim, Defendants have the burden of showing that four questions, mirroring the factors set forth in *Turner*, have been answered in the affirmative. (Dkt. No. 97, Part 3, at 6.)  I believe that this strict reliance on *Turner* is misplaced under the circumstances.  Setting aside the issue of whether *Turner* places the burden on the Government or *the prisoner* under the circumstances, the fact remains that (1) *Turner* involved a claim arising under the First and Fourteenth Amendments (not the Fourth Amendment), and (2) *Turner* addressed a prisoner's challenge to a prison regulation. Here, Plaintiff does not challenge a prison regulation under the First or Fourteenth Amendments (or any constitutional provision).  Indeed, he finds DOCS Directive 4910 to be acceptable.  (*Id*. at 6-13.)[12]  Rather, he is asserting that Defendants have failed to comply with that regulation, in violation of the Fourth Amendment.  (*Id*.)  For these reasons, Plaintiff must twist, almost beyond recognition, the factors set forth in *Turner*, in order to apply them to his claim.[13]

---

[12]    For example, Plaintiff argues, "These complaints by the Plaintiff are not a challenge to the legal authority of the regulation and Directive of the Department of Correctional Services, but rather is a challenge to the acts of the defendants, and the personal opinion of a prison administrator, defendant Green, who says that he can add to the language of the legal Directive because in his opinion it's [sic] provisions are not sufficient to accomplish the legitimate task of searches for and control of contraband; and that his opinion is sufficient to allow Correction officers to exceed the bounds of the Directive governing their conduct. . . . That is the crux of this case, that the pat frisk[s] conducted WERE NOT CONDUCTED TO, NOR IN ACCORDANCE WITH[,] D.O.C.'S DIRECTIVE 4910 . . . ." (Dkt. No. 97, Part 3, at 7-8 [emphasis in original].)

[13]    For example, the first factor in *Turner* is whether there is "a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it." *Turner v. Safely*, 482 U.S. 78, 89 (1987) [internal quotation marks and citation omitted].  However, Plaintiff characterizes this factor as requiring Defendants to provide "an articulable reason for the violation of Plaintiff's Constitutional rights in the furtherance of some valid interest of the prison." (Dkt. No. 97, Part 3, at 6.)  The second factor in *Turner* is whether there are "alternative means of exercising the right [restricted by the prisoner regulation] that remain open to prison inmates." *Turner*, 482 U.S. at 90.  However, Plaintiff characterizes this

To give Plaintiff a better understanding of the correct legal standard governing his claim, it is necessary to step back and explain the nature of his claim for unreasonable searches under the Fourth Amendment.  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches . . . shall not be violated."  U.S. Const. amend IV.  "What is reasonable, of course, depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself."  *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) [internal quotation marks and citation omitted].  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."  *Skinner*, 489 U.S. at 619 [internal quotation marks and citations omitted].[14]

The central flaw in Plaintiff's Fourth Amendment claim is that he hinges it on an (alleged) violation of DOCS Directive 4910.  As an initial matter, I find that there has been no such violation for the reasons stated in my prior Report-Recommendation, which was adopted by Chief Judge Mordue after a *de novo* review.  (*See* Dkt. No. 60, at 26-30, *adopted*, Dkt. No. 66, at 1.)  More specifically, DOCS Directive No. 4910 expressly authorizes corrections officers to conduct random searches of "an inmate's person" for contraband by, among other methods, "pat frisks."[15]  While Plaintiff is correct that Directive No. 4910 provides that "[t]he employee

---

factor as requiring Defendants to "answer the question of whether there is an alternative means to maintain the interest of the prison." (Dkt. No. 97, Part 3, at 6.)

[14]    I note that, in so doing, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) [citations omitted], *accord*, *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992).

[15]    (DOCS Directive No. 4910, §§ II., III.B. [9/17/01].)

conducting a personal search must . . . not offend the dignity of the inmate being searched," the

Directive also provides that "[t]he employee conducting a personal search must assure its

thoroughness."[16]  Accordingly, Directive No. 4910 defines a "pat frisk" as "a search by hand of

an inmate's person and his or her clothes while the inmate is clothed," which "shall include

searching *into* the inmate's clothing."[17]  Furthermore, Directive No. 4910 emphasizes the

importance of the rationale for searching "an inmate's person," which is the fact that (1) "[t]he

presence of contraband within a facility and its subsequent possession and/or use by inmates

threatens the security of the facility, endangers the safety of inmates, employees, visitors, and the

community, and impairs rehabilitation programs," and (2) "[t]he experience of correctional

authorities in the operation of facilities has demonstrated that . . . searches of . . . the inmate's

person are essential to the discovery and elimination of contraband."[18]  For all these reasons, I

find that Defendant Green's interpretation of the term "pat frisk" as involving "the touching of

the inside of the inmate's legs, his groin area and his buttocks" complies with Directive No.

4910.[19]

　　　　Furthermore, even if there had been such a violation of DOCS Directive 4910, it would

not, in and of itself, constitute a violation of the Fourth Amendment.[20]  This is because, as

---

[16]　　　　(DOCS Directive No. 4910, § III [9/17/01].)

[17]　　　　(DOCS Directive No. 4910, §§ II., III.B.1. [9/17/01] [emphasis added].)

[18]　　　　(DOCS Directive No. 4910, §§ II., III. [9/17/01].)

[19]　　　　(Dkt. No. 94, Part 3, ¶¶ 20, 25; *see also* Dkt. No. 15, Part 2, ¶¶ 9-11.)

[20]　　　　*See Vasquez v. Coughlin*, 84-CV-4809, 1991 U.S. Dist. LEXIS 20918, at *63-72
(S.D.N.Y. Apr. 24, 1991) (finding that inmate had established a Fourth Amendment claim for
strip search after applying the Fourth Amendment's balancing test and finding that a less-

discussed above, a *balancing test* is used to decide whether there has been a violation of the

Fourth Amendment.  Here, that balancing test weighs decidedly against finding a violation of the

Fourth Amendment.

Specifically, with respect to the first interest to be balanced (i.e., the intrusion of the

individual's Fourth Amendment interest of privacy), I find that the expectation of privacy that

Plaintiff *reasonably* possessed, under the circumstances, was of a limited nature.  In particular, I

note that Plaintiff was a convicted felon incarcerated in a maximum-security correctional facility.

As the Supreme Court has observed, generally, "given the realities of institutional confinement,

any reasonable expectation of privacy that a detainee retain[s] necessarily [is] of a diminished

scope." *Bell*, 441 U.S. at 556-57.[21]  I note also that the particular privacy interest claimed by

Plaintiff in this case did *not* consist of being free from a "strip search."[22]  Rather, the particular

privacy interest claimed by Plaintiff consists of not having his penis, testicles and "anal cavity"

---

intrusive x-ray examination of him would have discovered the contraband in question–not basing
that finding merely on the fact that DOCS Directive 4910 had been violated); *cf. Wilson v.
Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995) ("[V]iolation of a police department regulation
[regarding the appropriate use of lethal force] is insufficient for liability under section 1983 [on
the plaintiff's Fourth Amendment unreasonable seizure claim].") [citation omitted].

[21]     For example, the Fourth Amendment's proscription against unreasonable searches
does not apply *at all* within the confines of a prison cell.  *Hudson v. Palmer* 468 U.S. 517, 526
(1984); *see also Tinsley v. Greene*, 95-CV-1765, 1997 WL 160124, at *7 (N.D.N.Y. March 31,
1997) (Pooler, J., adopting Report-Recommendation of Homer, M.J.) ("Searches of prison cells,
even arbitrary searches, implicate no protected constitutional rights."); *Demaio v. Mann*, 877 F.
Supp. 89, 95 (N.D.N.Y.) (Kaplan, J., sitting by designation) ("Searches of prison cells, even
arbitrary searches, implicate no protected constitutional rights."), *aff'd*, 122 F.3d 1055 (2d Cir.
1995).

[22]     A "strip frisk" involves, among other things, "a visual inspection of body
cavities."  (DOCS Directive No. 4910, § III.E.1. [9/17/01].)

touched (almost always through clothing),[23] under circumstances in which he acknowledges it was perfectly permissible for correctional officers, while conducting the authorized pat frisks, to touch his "groin area and buttocks" (through clothing).[24]  I emphasize that the zone of privacy in question focuses on the region between a male's "groin area" and his "penis and testicles," and the region between a person's "buttocks" and his "anal cavity."[25]  Finally, the number of pat frisks at issue (for purpose of a reasonable-expectation-of-privacy analysis) is between four and eleven.[26]

_____

[23]    (*See* Dkt. No. 47, ¶¶ 35-38 [Plf.'s Supp. Compl., alleging occurrence of four "pat frisks" that were conducted in the same manner "as described in the Original Complaint"]; Dkt. No. 23, ¶ 16 [Plf.'s Am. Compl., alleging that, during pat frisk on 6/27/04, *after* Defendant Therrien had "closed Plaintiff's zipper," he "again touched Plaintiff's penis and then testicles and rectal cavity"]; Dkt. No. 43 [Ex. O-4 to Plf.'s Supp. Compl., attaching document that alleges that during pat frisk on 10/1/04, *after* Defendant Therrien "yanked my pants up by the waistband . . . so that the pants were tightly against my genitals and the crease of my buttocks," Defendant Therrien "then proceeded to touch my penis and twice place his hand between the cheeks of my buttocks, touching my rectal cavity"] [emphasis added].)

[24]    (Dkt. No. 97, Part 3, at 8 [Plf.'s Mem. of Law, arguing,  "According to the Directive the groin area and the buttocks can be touched.  However, the Directive does not say that the penis and testicles can be touched during a pat frisk, or that the excretory opening to the rectal cavity, [or] the area between the buttocks can be touched and felt.  Those are the specific areas complained of by the Plaintiff."].)

[25]    For the sake of argument, I will assume that there is a difference between a search of the "groin area" and the "penis and testicles," and a difference between a search of the "buttocks" and the "anal cavity," although these differences are far from clear to me.

[26]    The number of improper pat frisks alleged by Plaintiff in his Supplemental Complaint is four.  (*See* Dkt. No. 47, ¶¶ 35-38 [Plf.'s Supp. Compl.].)  Plaintiff would, no doubt, argue that the number of pat frisks that should be considered during a reasonable-expectation-of-privacy analysis is much higher than four, specifically, *eleven* pat frisks.  (*See*, *e.g.*, Dkt. No. 97, Part 3, at 3, 5 [Plf.'s Mem. of Law, arguing that Magistrate Judge Lowe in his prior Report-Recommendation, "erroneously . . . dissect[ed] the full body of Plaintiff's claims, isolat[ing] and separat[ing] those claims to detract from the full force of the violations . . . .  The Supplemental Complaint filed by Plaintiff alleges he was pat frisked on four additional occasions, subsequent to the original seven occasions, which were done in retaliation against him . . . ."].)  As an initial

16

Moreover, with respect to the second interest to be balanced (i.e., the Government's interest promoted by the practice in question), I find that the Government has shown that the practice at issue (i.e., of conducting random pat frisks that may involve some manipulation of an inmate's genitalia) is reasonably related to the legitimate penological interests of "institutional security, order, and discipline."[27]  (*See*, *supra*, note 18 of this Report-Recommendation; *see also* Dkt. No. 94, Part 3, ¶ 6.)[28]  As the Supreme Court has noted, "[a] detention facility is a unique place fraught with serious security dangers." *Bell*, 441 U.S. at 559.  Furthermore, I repeat that I reject Plaintiff's argument that a proper "pat frisk" may not involve some amount of manipulation of an inmate's genitalia.  In addition to the authorities cited above in notes 15 through 19 of this Report-Recommendation, I rely on a 2005 decision by U.S. District Court for the Western District of New York, which found that,

> [a]ny manual search of an individual's body will require some amount of manipulation of the genitals in order to accomplish the purpose of the search.  Although 'grabbing' and 'tugging' could cause some discomfort and embarrassment, it does not rise to the level of 'unnecessary and

---

matter, I find only six (not seven) additional pat frisks alleged in Plaintiff's Amended Complaint. (Dkt. No. 23, ¶¶ 6, 11, 16, 17, 19, 25 [Plf.'s Am. Compl., alleging that improper pat frisks occurred on 5/17/04, 6/6/04, 6/19/04, 6/27/04, 7/14/04, 7/15/04].)  Furthermore, I find that regardless of whether the number of pat frisks at issue is four or eleven, my conclusion would still be the same that the expectation of privacy that Plaintiff *reasonably* possessed, under the circumstances, was of a limited nature.

[27]  *Roe v. Marcotte*, 193 F.3d 72, 80-82 (2d Cir. 1999) ("While convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement, the rights they retain are subject to restrictions dictated by concerns for institutional security, order, and discipline."); *see also Skinner*, 489 U.S. at 619 ( "The Government's interest in regulating . . . its operation of a . . . prison . . . presents special needs beyond [the] normal [need for] law enforcement . . . .") [internal quotation marks and citation omitted].

[28]   *See also N.G. v. Conn.*, 382 F.3d 225, 231 (2d Cir. 2004) ("[T]he 'special needs'" standard applies to searches in penal institutions . . . .").

> wanton infliction of pain' so long as it occurs as part of an otherwise
> justified search.

*Davis v. Castleberry*, 364 F. Supp.2d 319, 321 (W.D.N.Y. 2005) (granting defendants' motion

for summary judgment in case alleging improper pat frisk) [internal quotations omitted].

Finally, I find that, under the circumstances, the Fourth Amendment balancing test

weighs decidedly in favor of Defendants.[29]  Indeed, I conclude that, based on the current record

before the Court, no rational fact-finder could find for Plaintiff on his Fourth Amendment claim.

As a result, I recommend that the Court dismiss the Fourth Amendment claim asserted in

Plaintiff's Supplemental Complaint.

**B.  Whether Plaintiff Has Adduced Evidence in Support of the Eighth
    Amendment Claim Alleged in His Supplemental Complaint**

The Eighth Amendment legal standard that Defendants recite in their memorandum of

law in support of their current motion for partial summary judgment is the exact same legal

standard recited in their memorandum of law in support of their prior motion for partial summary

judgment.  (*Compare* Dkt. No. 94, Part 9, at 7-8 *with* Dkt. No. 15, Part 14, at 7-9.)  In my Report-

Recommendation on Defendants' prior motion for partial summary judgment, I found this

recitation of the applicable legal standard to be correct.  (Dkt. No. 60, at 31.)  Furthermore, Chief

Judge Mordue approved and adopted my Report-Recommendation after finding it to be "correct

in all respects."  (Dkt. No. 66, at 1.)  As a result, I see no reason to disturb my previous finding

that Defendants have recited the correct legal standard governing Plaintiff's Eighth Amendment

---

[29]     *Cf. Bell*, 441 U.S. at 558 ("[W]e deal here with the question whether visual body-
cavity inspections as contemplated by the MCC rules can *ever* be conducted on less than
probable cause.  Balancing the significant and legitimate security interests of the institution
against the privacy interests of the inmates, we conclude that they can.").

claim.

In his opposition memorandum of law, Plaintiff essentially advances two arguments: (1) when deciding whether or not Plaintiff has adduced evidence in support of the Eighth Amendment claim asserted in his Supplemental Complaint, the Court should consider not merely the four improper pat frisks alleged in that Supplement Complaint but also the seven (or six)[30] improper pat frisks alleged in Plaintiff's Amended Complaint; and (2) at trial, he would be prepared to adduce testimony by his treating psychologist that the improper pat frisks he experienced caused him severe psychological harm.  (Dkt. No. 97, Part 3, at 9-13 [Plf.'s Mem. of Law].)

With regard to Plaintiff's latter argument (regarding testimony by his treating psychologist), Plaintiff makes two mistakes.  First, the test in deciding whether or not to grant a motion for summary judgment is not whether or not the non-movant would, at trial, be able to adduce evidence sufficient to defeat the motion, but whether or not the non-movant has, in opposing the motion, adduced such evidence.  *See* Fed. R. Civ. P. 56(c),(e),(f).  Here, I find no evidence of the nature Plaintiff describes (e.g., an affidavit of Plaintiff's treating psychologist, or Plaintiff's relevant medical records) in the record.  (*See* Dkt. No. 97, Parts 2, 4; Dkt. No. 94, Parts 3-8, 10.)  Thus, his argument fails.

Second, in any event, such evidence would be of minimal materiality to Plaintiff's Eighth Amendment claim.  That is because such a claim turns on (1) whether the alleged punishment was objectively sufficiently serious, and (2) whether the prison officials involved acted with a

---

[30]    (*See*, *supra*, note 26 of this Report-Recommendation [discussing whether Plaintiff alleged six or seven improper pat frisks in his Amended Complaint].)

sufficiently culpable state of mind.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1984).  Plaintiff

does not even allege that Defendants Therrien, Blood, or Green *knew* that Plaintiff was

(allegedly) receiving psychological treatment as a result of the pat frisks in question.  Rather, the

thrust of Plaintiff's argument is that the fact that he was receiving such psychological treatment

shows that the pat frisks were subjectively sufficiently serious.  The problem is that, as described

above, the issue is not whether the pat frisks were *subjectively* sufficiently serious but whether

they were *objectively* sufficiently serious.

     With regard to Plaintiff's former argument (that the Court should consider all the

improper pat frisks alleged by Plaintiff in his pleadings), even if I were to do so, I would still

conclude that Plaintiff's Eighth Amendment claim should be dismissed for lack of sufficient

evidence to create a genuine issue of material fact.  I note that the excessive punishment at issue

in this case consisted of having a pat frisk, on four to eleven occasions, *escalate* from a manual

search of Plaintiff's "groin area" and "buttocks" (which Plaintiff acknowledges was authorized

under DOCS Directive 4910) to a manual search of Plaintiff's "penis and testicles" and his "anal

cavity."  (*See*, *supra*, notes 23 and 24 of this Report-Recommendation.)  Far from being

gratuitous or wanton, such an *escalation*[31] bears a rational relationship to the legitimate

penological interests of institutional security, order, and discipline.  (*See*, *supra*, notes 18 and 27

of this Report-Recommendation.)  Simply stated, I find that no fact-finder could, based on the

---

[31]    As explained above in note 25 to this Report-Recommendation, for the sake of
argument, I will assume that there is a difference between a search of the "groin area" and the
"penis and testicles," and a difference between a search of the "buttocks" and the "anal cavity,"
although these differences are far from clear to me.

current record, find any such *escalation* to be of an Eighth Amendment magnitude.[32]

Because I find that the alleged punishment was not "objectively sufficiently serious" for Eighth Amendment purposes, I need not reach the issue of whether the prison officials involved acted with a "sufficiently culpable state of mind."  However, I note that, were I to reach that issue, I would conclude that none of the three Defendants acted with a sufficiently culpable state of mind but with good faith.  I would reach this conclusion based on (1) the lack of any evidence that any of the pat frisks involved an intentional and/or sexual handling of Plaintiff's genitals and/or rectal area, and (2) the evidence of good faith submitted by Defendants.  (*See*, *e.g.*, Dkt. No. 94, Part 3 at ¶¶ 20-21, 27-28 [Affidavit of Defendant Green, denying any improper intent on his part]; Dkt. No. 94, Part 4, at 2-3 [attaching Investigation Sheet dated 9/16/04, and Inter-Departmental Communication dated 9/14/04]; Dkt. No. 94, Part 5, at 4-7 [attaching Inter-Departmental Communications dated 10/6/04, 10/5/04, 10/7/04, and 10/5/04, respectively]; Dkt. No. 94, Part 6, at 4, 7 [attaching Inter-Departmental Communications dated 10/9/04 and 10/6/04]; Dkt. No. 94, Part 7, at 3 [attaching Inter-Departmental Communication dated 10/22/04].)

For both of these alternative reasons, I recommend that the Court dismiss the Eighth Amendment claim asserted in Plaintiff's Supplemental Complaint.

---

[32]     *See Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) (affirming Rule 12[b][6] dismissal of plaintiff's claim of sexual assault in violation of his rights under the Eighth Amendment violation, because, even if true, the "small number of incidents in which he was allegedly verbally harassed, touched, and pressed against without his consent" were not "cumulatively egregious in the harm they inflicted") [emphasis added]; *Montero v. Cruise*, 153 F. Supp.2d 368, 373, 375 (S.D.N.Y. 2001) (granting motion for summary judgment as to inmate's civil rights claim alleging that corrections officer violated Plaintiff's rights under the Eighth Amendment by, on several occasions, squeezing his genitalia during pat frisks).

**C.**   **Whether Plaintiff Has Adduced Evidence Establishing the Personal Involvement of Defendant Green in the Fourteenth Amendment Due Process Violations Alleged in His Supplemental Complaint**

As explained above in Part I.B. of this Report-Recommendation, Plaintiff's Supplemental Complaint alleges, in pertinent part, that, at some point between October 20, 2004, and October 26, 2004, Defendant Green knowingly appointed a biased hearing officer (named J. Jackowski) to conduct the hearing on the October 20, 2004, misbehavior report filed by Defendant Blood (and, in that way, "conspired" with the hearing officer to wrongfully convict Plaintiff of the disciplinary charges brought by Defendant Blood).[33]

Defendants argue that this claim (which asserts a due process violation) should be dismissed because Plaintiff has adduced no evidence in support of it.  (Dkt. No. 94, Part 9, at 8-10.)  Indeed, they argue, the record evidence establishes that the hearing officer who conducted the hearing in question was (1) appointed in a routine manner by the facility's disciplinary office and (2) approved not by Defendant Green but by First Deputy Superintendent James Plescia.  (*Id*.; *see also* Dkt. No. 94, Part 3, ¶ 29 [Green Decl.]; Dkt. No. 94, Part 8 [Ex. E to Green Decl.].)

In response, Plaintiff asserts two arguments: (1) by acknowledging that Defendant Green did not personally "designate" the employee who conducted the proceed, Defendants have acknowledged that Defendant Green violated 7 N.Y.C.R.R. § 254.1 by not personally appointing

---

[33]      (Dkt. No. 47, ¶ 40 [Plf.'s Supp. Compl.]; Dkt. No. 47 [Exs. O-7 and O-8 to Plf.'s Supp. Compl.].)

the hearing officer, and thus he violated Plaintiff's due process rights;[34] and (2) in any event,

because Defendants never adduced this evidence before now, discovery should be reopened and

Plaintiff should be permitted to amend his Supplemental Complaint.  (Dkt. No. 97, Part 3, at 14-

17.)

  With respect to Plaintiff's first argument (regarding the alleged violation of 7 N.Y.C.R.R.

§ 254.1), I will assume, for the sake of argument, that Plaintiff need not have raised this objection

at his disciplinary hearing in order to properly preserve it for review before this Court.[35]  I will

also assume that the part of Section 254.1 that reads, "[T]he superintendent may, in his or her

discretion, designate some other employee to conduct the proceeding" does *not* mean that the

superintendent may rely on the first deputy superintendent to approve hearing officers appointed

in a routine manner by the facility's disciplinary office.

  Even setting these issues aside, I would reject Plaintiff's argument because it disregards

an important point of law.  Specifically, a violation of a state regulation does not automatically

---

[34] Section 254.1 reads as follows:

> The person appointed to conduct the superintendent's hearing shall be
> either the superintendent, a deputy superintendent, captain or
> commissioner's hearing officer employed by the department's central
> office, but *the superintendent may, in his or her discretion, designate*
> *some other employee to conduct the proceeding*.  The following
> persons shall not be appointed to conduct the proceeding: a person
> who actually witnessed the incident; a person who was directly
> involved in the incident; the review officer who reviewed the
> misbehavior report, or a person who has investigated the incident.

7 N.Y.C.R.R. § 254.1 [emphasis added].

[35] *See Purnell v. Kelly*, 497 N.Y.S.2d 574, 574-75 (N.Y. App. Div., 4th Dept., 1985)
(where prisoner never expressly objected to designee appointed, objection was not properly
preserved for judicial review).

mean there was a violation of the Due Process Clause of the Fourteenth Amendment.  *See*

*Russell v. Selsky*, 35 F.3d 55, 59-61 (2d Cir. 1994) (even though Section 254.1 was violated by

having same person act as review and hearing officer, due process rights of inmate were not

violated because "[f]ederal constitutional standards rather than state statutes define the

requirements of procedural due process," and prisoner failed to adduce proof of actual bias)

[citations omitted].[36]  Rather, a due process violation requires something more.[37]  Here, Plaintiff

does not even adduce evidence that he would have been appointed a different hearing officer had

Defendant Green not (allegedly) violated Section 254.1

Moreover, the nature of the Fourteenth Amendment claim that Plaintiff asserts against

Defendant Green in the Supplemental Complaint is not that Defendant Green violated Section

254.1 by not being involved enough in the designation of the hearing officer in question (e.g., by

permitting his first deputy to approve the disciplinary hearing officer who had been appointed by

---

[36]     *See also Doe v. Conn. Dept. of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir.
1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants
of the defense of qualified immunity to a proper § 1983 claim."); *Patterson v. Coughlin*, 761 F.2d
886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not in itself
violate the Constitution and is not alone actionable under § 1983 . . . .") [citation omitted];
*Murray v. Michael*, 03-CV-1434, 2005 WL 2204985, at *10 (N.D.N.Y. Sept. 7, 2005)
(DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary
hearings . . . do not rise to the level of constitutional violations.") [citation omitted]; *Rivera v.
Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) ("[V]iolations of state law procedural
requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional
standards rather than state law define the requirements of procedural due process.'") [citing
*Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990)].

[37]     *See, e.g., Sandlin v. Connor*, 515 U.S. 472, 483-84 (1995) (shifting the Court's
focus, in a due process analysis, from the language of a particular state law or regulation to the
nature of the deprivation, and explaining that there will be a violation of the Fourteenth
Amendment's Due Process Clause, only when there has been a "freedom from restraint which
. . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents
of prison life").

24

the disciplinary office) but that Defendant Green was, in effect, *too involved* in the designation of

the hearing officer (i.e., by appointing someone whom he *knew* would render "a false finding of

guilt against Plaintiff [and] deny Plaintiff's due process rights," *see* Dkt. No. 47, ¶ 40).  With

regard to this claim, assuming that Hearing Officer J. Jackowski was indeed biased at Plaintiff's

disciplinary hearing (a fact of which I find little if any evidence in the record),[38] Plaintiff has

failed to adduce any evidence that Defendant Green *knew* that Hearing Officer Jackowski would

be so biased.  (*See generally* Dkt. No. 97.)  A prison superintendent cannot be held liable under

42 U.S.C. § 1983 simply because of the (allegedly) unlawful conduct of a subordinate.[39]

        With respect to Plaintiff's second argument (regarding Defendants' alleged failure before

now to adduce any evidence or information of Defendant Green's lack of involvement in the

appointment of Hearing Officer Jackowski), Plaintiff has adduced no evidence that he ever

*requested* such evidence or information during discovery.  Thus, I fail to see why Defendants

were under any obligation to give such evidence or information.  Furthermore, as to Plaintiff's

implication that he lacked notice of this factual assertion by Defendants, I note that, in their

Answer to Plaintiff's Supplemental Complaint, Defendants denied *all* of the first sentence of

Paragraph 40 of Plaintiff's Supplemental Complaint, wherein Plaintiff asserted,

---

[38]        The only reason one has to believe that Hearing Officer Jackowski committed an
error during Plaintiff's disciplinary hearing is the fact that Plaintiff's disciplinary conviction was
subsequently reversed.  (Dkt. No. 97, Part 4, at 42.)  The reversal does not state the reason for the
reversal.  (*Id.*)

[39]        *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1996) ("Absent some personal
involvement by [the prison superintendent] in the allegedly unlawful conduct of his subordinates,
he cannot be held liable under section 1983.") [citations omitted].

25

> Defendant Green conspired to further violate the Civil Rights of
> Plaintiff by assigning a Hearing Officer to conduct a Superintendent's
> hearing against Plaintiff on the false misbehavior report filed against
> Plaintiff by Defendant Blood, such [H]earing Officer who [sic]
> Defendant Green either instructed, knew or should have known would
> [sic] predetermine a wrongful finding of guilt against the Plaintiff,
> deny Plaintiff's Due Process rights and illegally punish Plaintiff for
> having filed grievances and c[o]mplaints against the Defendants.

(*Compare* Dkt. No. 47, ¶ 40 [Plf.'s Supp. Compl.] *with* Dkt. No. 57, Part 1, ¶ 40 [Answer to

Supp. Compl.].)

For all these reasons, I accept Defendants' argument and reject Plaintiff's argument.  As a

result, I recommend that the Court dismiss the Fourteenth Amendment claim against Defendant

Green asserted in Plaintiff's Supplemental Complaint.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' second motion for partial summary judgment (Dkt.

No. 94) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days

within which to file written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d

Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28

U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:  December 20, 2007
        Syracuse, New York

George H. Lowe
United States Magistrate Judge

26